In the

# United States Court of Appeals
## For the Seventh Circuit

No. 18-3475

DAN PROFT and LIBERTY PRINCIPLES PAC,

*Plaintiffs-Appellants*,

*v.*

KWAME RAOUL, Attorney General of Illinois, *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cv-04947 — **Virginia M. Kendall**, *Judge*.

ARGUED SEPTEMBER 6, 2019 — DECIDED DECEMBER 16, 2019

Before EASTERBROOK, KANNE, and BRENNAN, *Circuit Judges*.

BRENNAN, *Circuit Judge*. A provision of the Illinois Election Code limits how much money entities can contribute to political campaigns. But in some races, Illinois lifts these limits, allowing certain entities to make unlimited campaign contributions and coordinate unlimited spending with candidates. Illinois Liberty PAC, an independent expenditure committee, is not one of these entities; indeed, Illinois bans all

independent expenditure committees from making campaign contributions and from coordinating spending with candidates.

Plaintiffs Dan Proft and the Illinois Liberty PAC do not attack the entire contribution and coordination ban enforced against independent expenditure committees. Rather, they seek to overturn the ban only when unlimited contributions and unlimited coordinated expenditures are allowed for others. Otherwise, plaintiffs claim, Illinois's ban violates the First Amendment rights of free speech and free association and the Fourteenth Amendment right of equal protection.

Whether a constitutional violation exists here depends on if the contribution and coordination ban is closely drawn to prevent corruption or the appearance of corruption. Because striking down the ban would increase the risk of corruption and circumvent other election code sections that work to prevent political corruption, we affirm the district court's dismissal of this suit and denial of plaintiffs' motion for a preliminary injunction.

## I.

### A. The Illinois Election Code

Like many states, Illinois permits political contributions by individuals, corporations, unions, associations, political action committees ("PACs"), and political parties. Illinois limits how much money these groups may contribute to a political campaign. *See* 10 ILL. COMP. STAT. 5/9-8.5(b). Individuals may contribute up to $5,000; corporations, unions, and associations may donate up to $10,000; and PACs may provide up to $50,000. *Id*. The Illinois Election Code does not limit

contributions by a political party in a general election, but it does limit a political party's contributions in a primary election. *Id.*

Unlike many other states, Illinois lifts these contribution limits in some races. If a candidate's self-funding exceeds $250,000 in a race for statewide office, or $100,000 in any other race, *or* if spending by an independent expenditure committee or individual exceeds either of these limits, the Illinois Election Code waives contribution limits for *all* candidates in that race. 10 ILL. COMP. STAT. 5/9-8.5(h), (h-5). In short, the code allows individuals and certain entities to contribute to and coordinate with candidates without limits when self-funding or independent expenditures exceed a threshold amount.

In addition to regulating contributions to candidates, the Illinois Election Code regulates independent expenditures. Those expenditures are (1) "any payment, gift, donation, or expenditure of funds," (2) used "for the purpose of making electioneering communications" or for advocating in support of a candidate or against a candidate, and (3) not made in coordination with a campaign. 10 ILL. COMP. STAT. 5/9-1.15. Before making political expenditures exceeding $3,000 in a 12-month period, the Illinois Election Code requires any entity (other than an individual) to first register as a political committee. 10 ILL. COMP. STAT. 5/9-8.6(b).

An independent expenditure committee is a type of political committee that may "accept unlimited contributions from any source, provided [] the independent expenditure committee does not make contributions to any candidate … , political party committee, or [PAC]." 10 ILL. COMP. STAT. 5/9-3(d-5). The Illinois Election Code never permits independent expenditure committees to contribute to candidates, even when

contribution limits are lifted for individuals and other enti-
ties.[1] If an independent expenditure committee violates the
code by contributing to a candidate, party, or PAC, the Illinois
State Board of Elections assesses a fine on the independent
expenditure committee "equal to the amount of any contribu-
tion received in the preceding 2 years by the independent ex-
penditure committee that exceeded the limits [] a [PAC]" may
accept in an election cycle. 10 ILL. COMP. STAT. 5/9-8.6(d). In
effect, the Illinois Election Code grants independent expendi-
ture committees a trade-off—they can raise unlimited funds
for independent expenditures, but they risk heavy fines if
those funds are contributed to candidates, parties, or PACs.

### B. Claims by Proft and Illinois Liberty PAC

Illinois Liberty PAC is an Illinois-based independent ex-
penditure committee that supports Illinois political candi-
dates committed to economic liberty. Proft founded Illinois
Liberty PAC and currently serves as its chairman and treas-
urer. Although the Illinois Election Code bars independent
expenditure committees from contributing to or coordinating
with candidates, Proft, through Illinois Liberty PAC, wants to
make unlimited contributions directly to political candidates
and coordinate with those candidates in races where the code
lifts contribution caps for other entities and individuals. To do
so, plaintiffs filed a complaint against the Illinois Attorney

---

[1] Federal law imposes a similar ban on independent expenditure com-
mittees contributing to federal candidates or coordinating with federal
candidates. *See McCutcheon v. FEC*, 572 U.S. 185, 193 n.2 (2014) ("A so-
called 'Super PAC' is a PAC that makes only independent expenditures
and cannot contribute to candidates."). But because Illinois Liberty PAC
is regulated by Illinois campaign finance law, federal campaign finance
regulations do not apply here.

General and the members of the Illinois State Board of Elections to obtain declaratory and injunctive relief permitting such contributions and coordinated spending. Plaintiffs argue that by excluding independent expenditure committees from making these contributions and coordinated expenditures, Illinois has violated their First Amendment rights to free speech and free association and their Fourteenth Amendment rights under the Equal Protection Clause.

Plaintiffs raised these arguments in a motion to enjoin the Illinois Attorney General from enforcing the Illinois Election Code in the 2018 election. The Illinois defendants opposed plaintiffs' preliminary injunction request and moved to dismiss plaintiffs' complaint. The district court looked to whether the code's ban on contributions and coordination by independent expenditure committees satisfied the Supreme Court's requirement that contribution limits serve "a sufficiently important interest and employ means closely drawn to avoid unnecessary abridgment of associational freedoms." *Buckley v. Valeo*, 424 U.S. 1, 25 (1976) (citations omitted). The court found that the Illinois Election Code's "suppression of independent expenditure committee[] contributions to candidates" satisfied the standard for constitutionality set by the Supreme Court because the ban "prevent[ed] corruption or its appearance" through "closely drawn means." After finding the contribution and coordination ban constitutional, the district court granted defendants' motion to dismiss and denied plaintiffs' motion for a preliminary injunction. Plaintiffs appeal those decisions.

## II.

### A.  Standards of Review

We review a dismissal order under Federal Rule of Civil Procedure 12(b)(6) de novo. *Tagami v. City of Chicago*, 875 F.3d 375, 377 (7th Cir. 2017) (citation omitted). To survive a Rule 12(b)(6) motion to dismiss, a claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When reviewing the district court's grant of a 12(b)(6) motion to dismiss, "[w]e construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in [the plaintiff's] favor." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (citations omitted).

Plaintiffs urge this court to apply a strict scrutiny standard when reviewing the contribution and coordination ban under the First Amendment because "the ban discriminates against certain political speakers … and in favor of others." Although "[m]ost laws that burden political speech are subject to strict scrutiny[,] … the Supreme Court has adopted a form of intermediate scrutiny" when contribution limits are at issue. *Ill. Liberty PAC v. Madigan*, 904 F.3d 463, 469 (7th Cir. 2018) (citation omitted). Under this intermediate scrutiny standard of review, "[c]ampaign contribution limits are generally permissible if the government can establish that they are 'closely drawn' to serve a 'sufficiently important interest.'" *Wis. Right to Life State PAC v. Barland*, 664 F.3d 139, 152 (7th Cir. 2011) (quoting *Buckley*, 424 U.S. at 25). And because coordinated expenditures "are as useful to [] candidate[s] as cash," coordinated expenditures are subject to the same closely drawn standard as contribution limits. *See FEC v. Colo. Republican Federal Campaign Committee*, 533 U.S. 431, 446 (2001) (citing

*Buckley*, 424 U.S. at 47). Because the Illinois Election Code bans contributions and coordinated expenditures by independent expenditure committees but not independent expenditures, we apply the "closely drawn" standard to plaintiffs' First Amendment claim. *See McCutcheon*, 572 U.S. at 197 (citing *Buckley*, 424 U.S. at 21, 25).

Plaintiffs also contend the contribution and coordination ban violates the Equal Protection Clause. When, as here, a plaintiff alleges equal protection challenges in a case involving First Amendment rights, the Supreme Court has applied strict scrutiny to equal protection challenges only "when a First Amendment analysis would itself have required such scrutiny." *Wagner v. FEC*, 793 F.3d 1, 32 (D.C. Cir. 2015). Because, in the context of contribution limits, "it makes no difference whether a challenge to the disparate treatment of speakers or speech is framed under the First Amendment or the Equal Protection Clause," *Ill. Liberty PAC v. Madigan*, 902 F. Supp. 2d 1113, 1126 (N.D. Ill. 2012) (citations omitted), *aff'd* 904 F.3d 463 (7th Cir. 2018), this court will apply the same standard of review to plaintiffs' Equal Protection Clause claim as to plaintiffs' First Amendment claim. Thus, whether the district court correctly dismissed the complaint turns on whether the Illinois Election Code's contribution and coordination ban serves "a sufficiently important interest and employs means closely drawn." *Buckley*, 424 U.S. at 25 (citations omitted).

### B. Discussion

"Preventing actual or apparent quid pro quo corruption is the *only* interest the Supreme Court has recognized as sufficient to justify campaign-finance restrictions" under the "closely drawn" standard. *Wis. Right to Life State PAC*, 664

F.3d at 153. *See also FEC v. Nat'l Conservative PAC*, 470 U.S. 480, 496–97 (1985) ("We held in *Buckley* and reaffirmed in *Citizens Against Rent Control* that preventing corruption or the appearance of corruption are the only legitimate and compelling government interests thus far identified for restricting campaign finances.").

Here, if the contribution and coordination ban on independent expenditure committees is lifted in races where contribution caps are removed, a substantial risk of actual or apparent corruption would arise. Lifting the ban in these races would allow independent expenditure committees to use "unlimited contributions from any source" to contribute unlimited sums of money to candidates and to coordinate unlimited spending with candidates. 10 ILL. COMP. STAT. 5/9-3(d-5). Allowing such large contributions to candidates would create manifest opportunities for corruption. *See Buckley*, 424 U.S. at 46 ("[I]ndependent advocacy … does not [] appear to pose dangers of real or apparent corruption comparable to those identified with large campaign contributions."). Plaintiffs discount these dangers and argue that contributions and coordinated expenditures by independent expenditure committees "would [not] pose a greater threat of corruption than contributions or coordination by anyone else." But striking down the coordination and contribution ban would permit independent expenditure committees to circumvent key sections of the Illinois Election Code that work to prevent political corruption.

Unlike independent expenditure committees, which are permitted to "accept unlimited contributions from any source," 10 ILL. COMP. STAT. 5/9-3(d-5), PACs are subject to restrictions on the amount of contributions they may receive

from any one individual or entity. 10 ILL. COMP. STAT. 5/9-8.5(d). Because the Illinois Election Code limits contributions to PACs, donors are less likely to use PACs as conduits for contributing money to candidates in corrupt dealings. For example, in a race where the contribution cap is lifted, an individual could enter into a quid pro quo agreement with a candidate, contribute up to $10,000 to a PAC, *id.*, and then request the PAC donate the money to the candidate. Although PACs can contribute to candidates without limits in races where the contribution cap is lifted, an individual donor could contribute up to $10,000 through PACs to a candidate in an election cycle. This $10,000 contribution limit reduces the risk of quid pro quo corruption. *See generally Buckley*, 424 U.S. at 38 (holding contributions to PACs can be limited to prevent the actuality and appearance of corruption). But if the contribution and coordination ban was struck down, donors could avoid the statutory safeguards that apply to PACs and instead use independent expenditure committees to donate unlimited sums of money to political candidates or coordinate with political candidates without limits in races where the contribution cap is lifted.

Partially lifting the contribution and coordination ban on independent expenditure committees also would permit individuals to circumvent Illinois's disclosure regime. Currently, an individual can donate unlimited sums of money directly to a candidate in a race where the contribution limits are lifted. 10 ILL. COMP. STAT. 5/9-8.5(h), (h-5). But under the disclosure regime imposed by Illinois's Election Code, candidates receiving contributions must disclose the "full name and mailing address" of any individual who contributed more than $150 to his or her campaign. 10 ILL. COMP. STAT. 5/9-10(b); 10 ILL. COMP. STAT. 5/9-11(a)(4). This disclosure—

linking the individuals making contributions to the candidates receiving those contributions—reduces the risk of corrupt dealings. *See Buckley*, 424 U.S. at 67 ("A public armed with information about a candidate's most generous supporters is better able to detect any post-election special favors that may be given in return.").

If the contribution and coordination ban were lifted, an individual could make unlimited contributions to an independent expenditure committee and then request that committee donate those funds to a candidate. Independent expenditure committees would still be required to disclose the name and mailing address of that individual if he contributes more than $150, 10 ILL. COMP. STAT. 5/9-10(b); 10 ILL. COMP. STAT. 5/9-11(a)(4), and the candidate and the independent expenditure committee would still have to disclose any contribution from the independent expenditure committee to the candidate that amounts to more than $150, 10 ILL. COMP. STAT. 5/9-10(b); 10 ILL. COMP. STAT. 5/9-11(a)(6). But, despite these provisions, an individual could obscure his identity as a donor by funneling his contributions through an independent expenditure committee. And passing contributions in this manner may be a particularly effective way of hiding quid pro quo transactions. Funds may commingle within an independent expenditure committee, and these committees may even transfer funds back and forth to one another without penalty under 10 ILL. COMP. STAT. § 5/9-8.6(d), further concealing the source of contributions to a candidate. Striking down the contribution and coordination ban for independent expenditure committees could thus permit corrupt actors to avoid Illinois's disclosure system and public oversight. *See Buckley*, 424 U.S. at 67 ("[D]isclosure requirements deter actual corruption and avoid the appearance of corruption by exposing large

contributions and expenditures to the light of publicity.").
This court has heeded "[t]he need for an effective and com-
prehensive disclosure system" in the past, and we do so again
here. *Ctr. For Individual Freedom v. Madigan*, 697 F.3d 464, 490
(7th Cir. 2012).

Plaintiffs' request would turn Illinois Liberty PAC into a
quasi-independent expenditure committee that can contrib-
ute to and coordinate with candidates.[2] Because contributions
and coordinated spending are at issue, we look to whether the
contribution and coordination ban satisfies "a sufficiently im-
portant interest and employs means closely drawn." *Buckley*,
424 U.S. at 25. The ban serves a sufficiently important inter-
est—the prevention of actual or apparent corruption—by
ensuring independent expenditure committees cannot cir-
cumvent key Illinois Election Code provisions that prevent
corruption, such as 10 ILL. COMP. STAT. § 5/9-8.5(d), which lim-
its political contributions, and 10 ILL. COMP. STAT. 5/9-10(b),
which requires financial disclosures. And, by prohibiting in-
dependent          expenditure          committees          from          making

_____

[2] If independent expenditure committees could make contributions to
candidates and coordinate with candidates as plaintiffs wish, Illinois
could then restrict contributions to independent expenditure committees.
Independent expenditure committees are only able to avoid limits on the
contributions they receive because those committees are limited to making
independent expenditures. *See SpeechNow.org v. FEC*, 599 F.3d 686, 696
(D.C. Cir. 2010) ("[B]ecause *Citizens United* holds that independent ex-
penditures do not corrupt or give the appearance of corruption as a matter
of law, then the government can have no anti-corruption interest in limit-
ing contributions to independent expenditure-only organizations."). In
that sense, should plaintiffs have succeeded in this case, Illinois could
have subjected Illinois Liberty PAC to the same regulations as PACs, in-
cluding contribution limits.

contributions to or coordinating spending with candidates, Illinois employs means closely drawn. Illinois's statutory scheme leaves ample room for independent expenditure committees to participate in Illinois politics. The ban regulates only contributions and coordinated spending by these committees—the activities most likely to give rise to the prospect of corruption.

### III.

Next, plaintiffs argue the district court erred when it denied their motion for a preliminary injunction. That motion sought to enjoin the "Defendants from enforcing Illinois'[s] ban on coordinated expenditures and contributions to candidates by independent expenditure committees in any race where contribution limits have otherwise been eliminated."

To obtain a preliminary injunction, "the moving party must establish that (1) without preliminary relief, it will suffer irreparable harm before final resolution of its claims; (2) legal remedies are inadequate; and (3) its claim has some likelihood of success on the merits." *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 381 (7th Cir. 2018) (citation omitted). If the moving party fails to make this showing, the court does not have to proceed to balancing the resulting harms. *Id.* (citation omitted). When reviewing a district court's grant or denial of a preliminary injunction, "[w]e review the district court's findings of fact for clear error, its legal conclusions *de novo*, and its balancing of the factors for a preliminary injunction for abuse of discretion." *D.U. v. Rhoades*, 825 F.3d 331, 335 (7th Cir. 2016) (citations omitted).

Here, the district court denied plaintiffs' motion for a preliminary injunction after finding that plaintiffs were unlikely

to succeed on the merits of their claims and that Illinois's interest in enforcing democratically enacted statutes and maintaining the integrity of the electoral process outweighs the harms imposed on plaintiffs by the challenged provision.

Because plaintiffs have not demonstrated any likelihood of success on the merits, the district court correctly denied their motion for a preliminary injunction. As mentioned above, the contribution and coordination ban is necessary to prevent corruption or its appearance and is closely tailored to that purpose. Setting aside plaintiffs' inability to succeed on the merits, plaintiffs have also failed to establish that they deserve equitable relief because their legal remedies are inadequate. If Proft wishes to make contributions to candidates or coordinate with candidates, he may reorganize Illinois Liberty PAC as a political action committee. And if Proft wishes to contribute to candidates, coordinate with candidates, *and* make independent expenditures, he may instead form a political action committee while continuing to manage Illinois Liberty PAC. 10 ILL. COMP. STAT. 5/9-2(d).

## IV.

The district court did not err by granting defendants' motion to dismiss and denying plaintiffs' motion for a preliminary injunction. Accordingly, its judgment is AFFIRMED.