In the

# United States Court of Appeals
## For the Seventh Circuit

No. 24-2649

CHICAGO TEACHERS UNION, LOCAL 1, AFT and MOSELEAN PARKER,

*Plaintiffs-Appellants*,

*v.*

EDUCATORS FOR EXCELLENCE, INC.,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:22-cv-02659 — **Edmond E. Chang**, *Judge*.

ARGUED SEPTEMBER 4, 2025 — DECIDED NOVEMBER 19, 2025

Before BRENNAN, *Chief Judge*, and KOLAR and MALDONADO, *Circuit Judges*.

BRENNAN, *Chief Judge*. The Labor Management Reporting and Disclosure Act of 1959 prohibits a union or employer from spending money to promote a candidate for union office. 29 U.S.C. § 481(g). The question here is whether a private individual or union may sue to enforce that proscription.

### I. Statutory Structure

Union elections can be influenced by employers. An employer may spend significant sums to promote its preferred candidate, who, if the candidate wins, could favor policies that benefit the employer rather than union membership. So, to "insure 'free and democratic'" union elections, Congress enacted the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"). *Chao v. Loc. 743, Int'l Bhd. of Teamsters*, 467 F.3d 1014, 1016 (7th Cir. 2006) (quoting *Wirtz v. Loc. 153, Glass Bottle Blowers Ass'n.*, 389 U.S. 463, 468 (1968)).

Section 481 of LMRDA regulates union elections.[1] For example, § 481(b) requires local labor organizations to elect their officers no less than once every three years. *Loc. No. 82 Furniture & Piano Moving v. Crowley*, 467 U.S. 526, 529 (1984).

At issue here is § 481(g), which states: "[n]o moneys received by any labor organization … and no moneys of an employer shall be contributed or applied to promote the candidacy of any person in any election." Section 481(g) generally prohibits a union or employer from spending money to promote candidates for union office. *Chao*, 467 F.3d at 1021–22.

Section 481 is enforced through § 482. The latter section's structure reflects Congress's preferred method for resolving union disputes. An aggrieved member of a labor organization must first exhaust the "remedies available under the constitution and bylaws" of his organization. § 482(a)(1). This first step shows Congress's preference for "allow[ing] unions great latitude in resolving their own internal controversies."

---

[1] "Title IV (also known as subchapter V) of the LMRDA, 29 U.S.C. §§ 481–483, is entitled 'Elections.'" *Id.*

*Calhoon v. Harvey*, 379 U.S. 134, 140 (1964). If the dispute remains unresolved, a union member may then file a complaint with the Secretary of Labor. § 482(a). The Secretary "shall investigate such complaint and, if he finds probable cause to believe that a violation of this subchapter has occurred and has not been remedied … bring a civil action against the labor organization as an entity in the district court of the United States." *Id.* at (b). The reason for this second step is "to utilize the agencies of Government most familiar with union problems to aid in bringing about a settlement through discussion before resort[ing] to the courts." *Calhoon*, 379 U.S. at 140. Importantly, these are post-election (not pre-election) remedies enacted so as "not to permit individuals to block or delay union elections by filing federal-court suits for violations of [§ 481]." *Id.*

There is, however, one pre-election remedy available. Section 481(c) instructs unions "to comply with all reasonable requests of any candidate to distribute … campaign literature … to all members … of such labor organization." 29 U.S.C. § 481(c); *Int'l Org. of Masters, Mates, & Pilots v. Brown*, 498 U.S. 466, 475 (1991). To enforce § 481(c), Congress permitted private pre-election suits. *Calhoon*, 379 U.S. at 140 n.13.

## II. Background

Chicago Teachers Union, Local 1 ("the Union") has 25,000 members that include teachers, aides, and support staff in Chicago public schools. The Union scheduled an election for late May 2022. One member, Moselean Parker, ran for a position.

Educators 4 Excellence ("Educators") is a non-profit corporation whose goal is to limit the power of teacher unions.

Educators sought out candidates for the election who would attempt to limit the power of teacher unions and their ability to collectively bargain over certain issues.

The Union sued Educators, arguing it contributed money to recruit and promote candidates in the May 2022 election. The Union also claimed Educators would continue to contribute money to candidates and interfere in future elections.[2] The complaint alleged causes of action under § 481(g) and Illinois law. Educators moved to dismiss the complaint, arguing in part that the plaintiffs failed to state a claim.

The district court agreed with Educators. After finding jurisdiction, the court considered whether the Union and Parker had a right of action under § 481(g). It concluded that "nowhere in Sections 481 or 482 is there an express private cause of action for the pre-election relief that [the plaintiffs] seek." And "there is nothing to suggest that Congress … created an implied pre-election private cause of action to enforce [§ 481(g)]." That is because § 482 is the exclusive means of enforcing § 481, except for § 481(c)—which has an express right of action. The state-law claims were also dismissed because they hinged on the dismissed federal-law claims. Plaintiffs timely appeal. A court reviews de novo a grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Proft v. Raoul*, 944 F.3d 686, 690 (7th Cir. 2019). "We construe the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged, and drawing all possible inferences in the plaintiff's favor." *Id.* (citation modified).

---

[2] The Union and Parker filed an initial complaint a day before the May 2022 election. After Educators moved to dismiss, the Court granted the Union and Parker's motion to file an amended complaint.

### III. Discussion

#### A. Jurisdiction

Jurisdiction first. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998). The Union's complaint submits it has an implied right of action under § 481(g). That satisfies federal subject-matter jurisdiction. *Id.* at 89; *McCready v. White*, 417 F.3d 700, 702 (7th Cir. 2005). Whether a plaintiff has a right of action goes to the merits, not jurisdiction. *Id.* ("That [plaintiff's] theory may be bad substantively does not negate that jurisdiction.").

A statement in *International Union of Operating Engineers Local 150 v. Ward* suggests the opposite: "For purposes of exercising federal jurisdiction under [28 U.S.C.] § 1331, such a claim 'arises under' federal law if the law in question creates a federal cause of action." 563 F.3d 276, 281 (7th Cir. 2009). Instead of following this language, however, we choose to adhere to Supreme Court precedent. *Bell v. Hood*, 327 U.S. 678, 682 (1946) ("Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover."); *Steel Co.*, 523 U.S. at 95–96; *see also McCready*, 417 U.S. at 702–03 (interpreting *Bell* and *Steel Co.*). We have jurisdiction to decide the Union's case.

#### B. Implied rights of action

The Union and Parker contend § 481(g) contains an implied private right of action.[3] Before evaluating that argument, we tour the jurisprudence of implied rights of action.

---

[3] Educators do not dispute that they are "employers" under § 481(g).

"[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). There are two types: express and implied. *E. Cent. Ill. Pipe Trades Health & Welfare Fund v. Prather Plumbing & Heating, Inc.*, 3 F.4th 954, 958–59 (7th Cir. 2021). An express right of action is stated in a statute's text. *See, e.g.*, 42 U.S.C. § 1983. By contrast, an implied right of action is judicially inferred— courts consider whether Congress intended to provide a private right of action in the statute. *Prather Plumbing*, 3 F.4th at 959. The latter is at issue here.[4]

The common law historically applied the equitable rule *ubi jus, ibi remedium*: where there is a right, there is a remedy. ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 313 (2012); *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 176–77 (2008) (Stevens, J., dissenting) (reviewing history of the Supreme Court's recognition of implied causes of action). Guided by this principle, courts at times have provided a remedy when a statute created a right. *See e.g.*, *Stearns v. Atl. & St. Lawrence R.R.*, 46 Me. 95, 95 (Me. 1858) ("To hold that there is no *remedy* would be, in effect, a denial of the *right* to recover"); SCALIA & GARNER, *supra*, at 313 n.2 (collecting cases). Perhaps the most famous invocation of the principle was in *Marbury v. Madison*: "every right, when withheld, must have a remedy." 5 U.S. (1 Cranch) 137, 147 (1803).[5]

---

[4] The Union's brief appears not to contest the district court's conclusion that the Union lacks an express cause of action.

[5] As is well known, in *Marbury* the Supreme Court held that Marbury's legal right to his commission did not entitle him to the remedy of mandamus.

Courts later began "assert[ing] a similar power to create private claims to accompany statutory prohibitions." SCALIA & GARNER, *supra*, at 313. In *J.I. Case Co. v. Borak*, 377 U.S. 426 (1964), the Court held that private parties may sue under § 14(a) of the Securities Exchange Act of 1934, even though "Congress made no specific reference to a private right of action in [§] 14(a)." *Id*. at 431. The Court inferred Congressional intent from the statute's purpose. "[I]it is the duty of the courts to be alert to provide such remedies as are necessary to make effective the congressional purpose." *Id.* at 433.

*Cort v. Ash* retreated from *Borak*. 422 U.S. 66 (1975). Rather than a statute's purpose, four factors are to be weighed: whether (1) the plaintiff belonged to the class for whose especial benefit the statute was enacted, (2) Congress intended to create or deny such a remedy, (3) creating a right of action was consistent with the statute's purposes, and (4) the cause of action is traditionally relegated to state law. *Id.* at 78. The Court later applied these factors to hold that a private right of action existed to enforce Title IX of the Education Amendments of 1972. *Cannon v. Univ. of Chi.*, 441 U.S. 677, 688–89 (1979).

The *Cort* factors have been sapped of their strength. In the same year as *Cannon*, the Court in *Touche Ross & Co. v. Reddington* concluded that § 17(a) of the Securities Act of 1934 did not contain a private right of action. 442 U.S. 560, 567 (1979). Acknowledging *Cort*'s four factors, the Court observed that *Cort* "did not decide that each of these factors is entitled to equal weight." *Id.* at 575. Instead, the "central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Id.*

*Alexander v. Sandoval* provides the Court's current framework for implied rights of action. 532 U.S. at 275. The question

there was whether private individuals could sue to enforce disparate-impact regulations promulgated under Title VI of the Civil Rights Act of 1964. *Id.* at 278. The Court held that individuals could not. "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create … a private remedy." *Id.* at 286. Congressional intent was revealed through the text and structure of Title VI. *Id.* at 288. For example, "rights-creating" language was "completely absent" from § 602 of Title VI. *Id.* And the statute's text spoke to the regulating agencies, not the protected individuals. *Id.* at 289. Further, an enforcement mechanism other than a private right of action already existed, and the "express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Id.* at 290.

Our court has recognized "[a] strong presumption exists against the creation of such implied rights of action." *W. Allis Mem'l Hosp., Inc. v. Bowen*, 852 F.2d 251, 254 (7th Cir. 1988); *see also* SCALIA & GARNER, *supra*, at 313. This court and other courts of appeals have walked back from *Cort*'s four factors by focusing on the second factor, congressional intent. *Ward*, 563 F.3d at 285; *see, e.g.*, *Wisniewski v. Rodale, Inc.*, 510 F.3d 294, 299–300 (3d Cir. 2007); *Yoshikawa v. Seguirant*, 74 F.4th 1042, 1047 (9th Cir. 2023) (en banc).[6] *Sandoval*'s instruction that courts look to Congress's intent, therefore, governs our inquiry. 532 U.S. at 286.

---

[6] *See also Thompson v. Thompson*, 484 U.S. 174, 189 (1988) (Scalia, J., concurring) ("It could not be plainer that we effectively overruled the *Cort v. Ash* analysis.").

### C. Whether § 481(g) has an implied right of action

These principles in mind, we turn to the question here: Can private individuals sue to enforce § 481(g)'s ban on employer expenditures promoting candidates for union office? We hold that Congress did not intend § 481(g) to allow for such suits.

Most revealing of Congress's intent is that § 481(g) already has a method of enforcement: § 482. "The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others." *Sandoval*, 532 U.S. at 290. This "canonical" rule means "when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies." *Teamsters Loc. Union No. 705 v. Burlington N. Santa Fe, LLC*, 741 F.3d 819, 824 (7th Cir. 2014) (quoting *Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974)); *see also Karahalios v. Nat'l Fed'n of Emps.*, 489 U.S. 527, 533 (1989).

That rule applies with particular force here. For 60 years, the Supreme Court has recognized § 482 as the exclusive remedy to enforce § 481 violations. *Calhoon*, 379 U.S. at 140. It is the Secretary of Labor who brings civil actions on behalf of aggrieved union members. 29 U.S.C. § 482(b). That exclusivity strongly, if not dispositively, suggests that Congress intentionally omitted a private right of action as an alternative way to enforce § 481(g).

Further, as the exclusive method of enforcement, § 482 permits individuals to file complaints with the Secretary *post*-election. *Calhoon*, 379 U.S. at 140. Yet the Union seeks to enforce § 481(g) *pre*-election. Greenlighting pre-election suits

disrupts Congress's legislative choice "not to permit individuals to block or delay union elections by filing federal-court suits for violations of Title IV." *Id.* Congress's chosen enforcement scheme is entitled to respect. *Cf. Advoc. Christ Med. Ctr. v. Kennedy*, 605 U.S. 1, 20 (2025) ("We must respect the formula that Congress prescribed.").

Consider too that a different provision, § 481(c), has an express pre-election private right of action. *Dunlop v. Bachowski*, 421 U.S. 560, 566 (1975), *overruled on other grounds by*, *Crowley*, 467 U.S. at 539 ("Certain LMRDA provisions concerning pre-election conduct … 481(c), are enforceable in suits brought by individual union members."); *Calhoon*, 379 U.S. at 140 n.13. So Congress knew how to make an express pre-election cause of action in § 481. *Cf. Touche Ross*, 442 U.S. at 571–72 ("[W]hen Congress wished to provide a private damage remedy, it knew how to do so."). We presume therefore that Congress intentionally omitted a pre-election private cause of action in § 481(g). "Atextual judicial supplementation is particularly inappropriate when, as here, Congress has shown that it knows how to adopt the omitted language." *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019).

Concluding that § 481(g) lacks an implied right of action puts us in good company. In *McBride v. Rockefeller Family Fund*, 612 F.2d 34 (2d Cir. 1979) (per curiam), the Second Circuit held that § 481(g) contains no implied right of action because Congress intended to funnel union complaints to the Secretary of Labor with his "special knowledge and discretion." *Id.* at 35–36. We could not find, nor did the parties cite, any cases concluding that § 481(g) has an implied right of action.

The Union sees things differently. To argue that § 481(g) does include a private right of action, it relies on *Crowley*, 467 U.S. at 539. That case discussed Title I of LMRDA, which provides union members a "Bill of Rights" enforceable in court. *Id.* at 536 (citing 29 U.S.C. §§ 411–15). Here, the Union first plucks from context a statement in the opinion that Title I and Title IV (29 U.S.C. §§ 481–483) "protect[] many of the same rights." *Id.* at 539. Second, the Union claims that in *Crowley*, the Court recognized that union members should be able to sue their union for interfering with Title I rights. Thus, the argument runs, given the "symmetry" between Title IV and Title I, union members should be able to sue employers for § 481 (Title IV) violations. To the Union, this "parallel remedy" furthers LMRDA's purposes.

But *Crowley* reiterated that § 482 provides the exclusive remedy for § 481 violations. *Id.* at 540–41, 550. That repeated emphasis conveys that the Court did not believe § 481 included another method of enforcement, like the private right of action the Union requests here. So although *Crowley* did discuss the overlap between Title I and Title IV, the case cannot be read as expanding enforcement of § 481.[7] *See Driscoll v.*

---

[7] As further evidence of a pre-election implied right of action in § 481, the Union cites a statement by Senator John F. Kennedy: "Prior to the day of an election an individual can sue in a State. The day after an election the Secretary of Labor assumes jurisdiction." *Id.* at 542 n.18.

Instead, we have long disclaimed a legislator's statements as evidence of original meaning. "The text of the statute, and not the private intent of the legislators, is the law. Only the text survived the complex process for proposing, amending, adopting, and obtaining the President's signature (or two-thirds of each house). It is easy to announce intents and hard to enact laws." *Cont'l Can Co. v. Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund*, 916 F.2d 1154, 1157 (7th Cir. 1990).

*Int'l Union of Operating Eng'rs, Loc. 139*, 484 F.2d 682, 685–86 (7th Cir. 1973) ("Title I allows a private suit … and Title IV provides for complaint to and an action brought by the Secretary of Labor to vindicate Driscoll's right of candidacy for union office.").

Next, the Union believes that the explicit remedy, filing a complaint with the Secretary of Labor, is inadequate. After a filing, the Secretary brings "a civil action against the labor organization." § 482(b). But here, it is the employer alleged to have violated § 481(g)'s proscription, so it should be subject to the Secretary's enforcement. And even if the Secretary could sue the employer, the available remedies cannot thwart future violations of § 481(g). For these reasons, the Union maintains, it makes good sense to infer a private right of action. That way, a union and its members can preemptively prevent employers from violating § 481(g).

Yet, it is for Congress to address the Union's concern. "The determination of who can seek a remedy has significant consequences for the reach of federal power." *Stoneridge Inv. Partners*, 552 U.S. at 165. Such consequential decisions are "for Congress, not for us." *Id.* The Union's argument sounds in *Marbury*'s aspirational statement that every withheld legal right has a legal remedy. 5 U.S. at 147. That view aligns with the "*ancien regime*" of courts judicially inferring rights of action in the 1960s and 1970s. *Sandoval*, 532 U.S. at 287; *Comcast Co. v. Nat'l Ass'n. of Afr. Am.-Owned Media*, 589 U.S. 327, 334 (2020). Though that "may be a proper function for common-law courts," federal courts do not "raise up causes of action where a statute has not created them" *Sandoval*, 532 U.S. at 287 (citation modified). That is true no matter how "desirable it might be as a policy matter or how compatible with the

statute." *Id.* at 286–87 (citation modified). Indeed, it is not un-common for legal wrongs to lack a remedy. *See e.g.*, *Goldey v. Fields*, 606 U.S. 942, 944 (2025) (per curiam) (No *Bivens* remedy for Eighth Amendment excessive-force violation); *Malley v. Briggs*, 475 U.S. 335, 341 (1986) (Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."). The Supreme Court "swor[e] off the habit of venturing beyond Congress's intent," and we too decline the Union's "invitation to have one last drink." *Sandoval*, 532 U.S. at 287.

Finally, the Union points to *Ward*. There, this court inferred a right of action in § 501 of LMRDA. 563 F.3d at 277. The court began with the statute's text. *Id.* at 285. Section 501 "articulates a series of specific fiduciary duties," including that a union officer must hold the union's money and property for the benefit of membership. *Id.* These "explicit, affirmative fiduciary obligations" conferred federal rights because "[a] statute that imposes fiduciary *duties* necessarily implies corresponding *rights* in the beneficiaries." *Id.*

An accompanying right of action could also be implied by § 501's text. The statutory duty to "'account to the organization for any profit received' fairly implies that the union has a specific remedy." *Id.* at 287. And § 501 voids any "exculpatory provision in the union's organizational documents or resolutions that purports to relieve any union officer of liability for breach of the duties declared in the statute." *Id.* (citation modified). An exculpatory clause exists as a defense for a union officer sued by a union for a § 501 violation; "nullif[ying]" that defense suggests the union can sue in the first place. *Id.* ("[it] follows that the union must have a statutory remedy for

liability for breach against which this sort of defense might potentially be asserted").

*Ward*'s holding was thus based on the specific language of § 501. But no similar language appears in § 481. No provision voids any exculpatory clause. Nor is there language like "account to the organization for any profit received" that was critical to *Ward*'s holding. *Id.* at 286. And § 481(g) does not create a set of "explicit, affirmative fiduciary obligations." Rather, the provision forbids unions and employers from spending money to promote their preferred candidate. *Chao*, 467 F.3d at 1021–22. We agree with the district court that *Ward* is distinguishable.[8]

## IV. Conclusion

The Union and Parker ask this court to infer a private right of action in § 481(g). But § 482 is the exclusive method of enforcement for § 481. We therefore conclude that Congress did not intend private individuals to have a second path to enforce § 481. That § 481(c) has an express right of action buttresses this conclusion. If Congress wanted to include a right of action in § 481(g), it knew how to craft one. The district court is AFFIRMED.

---

[8] The district court also properly dismissed the state-law claims of the Union and Parker, which largely hinge on their federal-law claims. Further, the authority they cite, *Van Daele v. Vinci*, 282 N.E.2d 728 (Ill. 1972), is distinguishable as a due process case.

MALDONADO, *Circuit Judge*, concurring in the judgment. The majority opinion reaches the correct result in finding that there is no implied right of action under § 481(g). But on its way, the majority opinion unnecessarily dates the doctrine of implying a private right of action firmly in the past. Op. at 12–13. I have reservations with that gloss such that I cannot join the opinion in full. While no longer *en vogue*, the doctrine of implied rights of action remains alive and has been employed by this circuit and the Supreme Court in more recent years, including in the primary case relied on by CTU, *Int'l Union of Operating Eng'rs v. Ward*, 563 F.3d 276, 286–89 (7th Cir. 2009). *See also Ind. Prot. and Advoc. Servs. v. Ind. Fam. and Soc. Servs. Admin.*, 603 F.3d 365, 375–81 (7th Cir. 2010) (*en banc*) (interpreting the Protection and Advocacy for Individuals with Mental Illness Act "based on its language, structure, and purpose" to imply a private right of action); *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 178 (2005) (extending implied private right of action to retaliation claims under Title IX). Accordingly, I respectfully concur in the judgment.