In the

# United States Court of Appeals

### For the Seventh Circuit

No. 11-2502

DEBORAH COOK,

*Plaintiff-Appellant,*

*v.*

IPC INTERNATIONAL CORPORATION,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:09-cv-00275-GPM-SCW—**G. Patrick Murphy**, *Judge.*

ARGUED FEBRUARY 13, 2012—DECIDED MARCH 8, 2012

Before POSNER, WOOD, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*.  The plaintiff sued the defendant for sex discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964. The case was tried to a jury, which returned a verdict in favor of the defendant. The plaintiff appeals from the judgment entered by the district court in conformity with the verdict and from the district court's denial of her motion under Fed. R. Civ. P. 59 for a new trial.

The defendant provided security for a mall in Alton, Illinois, and employed the plaintiff as a security supervisor at the mall. She presented evidence that her immediate supervisor, a man named Spann, made sexually offensive comments to other women in her presence, said he wanted to have an all-male staff, and exhibited favoritism toward his male subordinates. The plaintiff complained to him repeatedly about his behavior. He refused to change his ways, and instead began giving her negative evaluations and accusing her in communications to the defendant's headquarters of serious misconduct, including theft; the jury could have found that the accusations were fabrications.

Apparently in response to Spann's charges the defendant's regional manager (and Spann's immediate superior), a man named Colburne, told the plaintiff that he was abolishing her job at the Alton mall and transferring her to a mall that the company provided security for in another town. The transfer may actually have been a demotion, for it was to be to a mall farther from her home, and thus would lengthen her commute, and to a line position rather than the position of "security supervisor" that she held at the Alton mall. She asked him whether she was being fired, and he said no.

That was on a Thursday, and that afternoon, after the meeting with him, she returned to work. She was not scheduled to work on Friday, but she returned to work as usual on Saturday. Spann saw her in uniform—saw she was still working at the Alton mall—and told her to clean out her locker and give him her office keys,

and she inferred not unreasonably that she was being fired. And so the jury found—contrary to the defendant's position, maintained throughout this litigation, that she was never fired. What is certain is that she never accepted the transfer or tried to reclaim her job at the Alton mall.

If the transfer would actually have been a demotion, or an action otherwise "materially adverse" to her, intended as retaliation for her complaining about employment discrimination, she would have a claim under Title VII. *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 67-71 (2006). But she has never claimed that, since she never was transferred, and she does not argue that the transfer order was a constructive discharge (that is, tantamount to firing, and treated the same by the law). Her claim is that Spann fired her when she showed up for work at the Alton mall two days after her meeting with Colburne, and that he did so both because of her gender (remember her testimony that he had said he wanted an "all-male" staff) and in retaliation for her having complained to him about his behavior toward women, behavior that could reasonably have been thought to violate Title VII and would thus bring the alleged retaliation within the statute's scope. 42 U.S.C. § 2000e-3(a); *Crawford v. Metropolitan Government of Nashville & Davidson County*, 555 U.S. 271, 276-78 (2009); *Burlington Northern & Santa Fe Ry. v. White, supra*, 548 U.S. at 67-73; *Fine v. Ryan Int'l Airlines*, 305 F.3d 746, 751-52 (7th Cir. 2002).

The judge instructed the jury that to find for the plaintiff it had to find first that she had been fired

and second "that a decisionmaker for IPC fired Plaintiff either because she was female or because she complained about sexually harassing comments. The decisionmaker is the IPC employee who was responsible for the decision to terminate Plaintiff. Here, Plaintiff has alleged that her supervisor Charles Spann was the IPC decisionmaker who terminated her employment." The plaintiff's lawyer objected to the "decisionmaker" instruction, explaining that "all the jury has to do is determine that the plaintiff was discharged from IPC as a result of her gender . . . and/or in retaliation for her resisting in good faith what she believed to be sexually harassing or sexually discriminatory conduct." The judge rejected the objection without explanation.

The jury as we said found that the plaintiff had indeed been fired. But it answered "No" to the second question on the verdict form, the question corresponding to the decisionmaker instruction: "Do you, the Jury, find that Charles Spann was the IPC International Corporation decisionmaker who terminated Deborah Cook's employment?" (The plaintiff's lawyer had objected to the question along with the instruction, also unsuccessfully.) And so she lost her case.

After deliberating for four hours the jury had sent a note to the district judge requesting clarification of the decisionmaker question. The jury wanted to know whether the word "the" in the phrase "the IPC decisionmaker who terminated her employment" meant "he was the *sole* decisionmaker versus being '*a*' decisionmaker meaning he was a part of the decision

to terminate Deborah Cook." Over the plaintiff's objection the judge answered: "'He' means the 'sole' decisionmaker." The judge was asked to clarify "the," not "he," and doubtless meant to do so, but he wrote "He." The jury may, however, have thought the judge meant that "he" must be the "sole" decisionmaker, which would answer the question.

In refusing to set aside the jury's verdict, the district judge said that the plaintiff had failed to advance a "cat's paw" theory of employer liability and therefore could prevail only if the jury found that Spann had been the "sole decisionmaker," that is, had been solely responsible for firing her. On appeal the plaintiff argues that the judge "replaced the Title VII 'a motivating factor' causation requirement with a 'sole causation' standard" and that this was "error as a matter of law." The reply brief invokes "multiple proximate causes."

This is all a dreadful muddle, for which we appellate judges must accept some blame because doctrine stated as metaphor, such as the "cat's paw" theory of liability, which we introduced into employment discrimination law in *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990); see *Staub v. Proctor Hospital*, 131 S. Ct. 1186, 1190 n. 1, 1192-94 (2011), can be a judicial attractive nuisance; because vague judicial terminology, such as "motivating factor" and "proximate cause" (the latter has been a part of the judicial vocabulary for the last 150 years, yet its meaning has never become clear, see *CDX Liquidating Trust v. Venrock Associates*, 640 F.3d 209, 214 (7th Cir. 2011); *BCS Services, Inc. v. Heartwood 88, LLC*, 637 F.3d 750 (7th Cir. 2011)), confuses judges, jurors,

and lawyers alike; and because philosophical conundra such as "causation" present unnecessary challenges to understanding.

In the fable of the cat's paw (a fable offensive to cats and cat lovers, be it noted), a monkey who wants chestnuts that are roasting in a fire persuades an intellectually challenged cat to fetch the chestnuts from the fire for the monkey, and the cat does so but in the process burns its paw. In employment discrimination law the "cat's paw" metaphor refers to a situation in which an employee is fired or subjected to some other adverse employment action by a supervisor who himself has no discriminatory motive, but who has been manipulated by a subordinate who does have such a motive and intended to bring about the adverse employment action. So if for example the subordinate has told the supervisor that the employee in question is a thief, but as the subordinate well knows she is not, the fact that the supervisor has no reason to doubt the truthfulness of the accusation, and having no doubt fires her, does not exonerate the employer if the subordinate's motive was discriminatory. As explained in *Staub v. Proctor Hospital*, *supra*, 131 S. Ct. at 1193, "since a supervisor is an agent of the employer, when he causes an adverse employment action the employer causes it; and when discrimination is a motivating factor in his doing so, it is a 'motivating factor in the employer's action.'"

Had Colburne fired the plaintiff because Spann had told him she was a thief, she would have a cat's paw claim. But she has not made such a claim; indeed, she

has disclaimed it. Her claim is that Spann fired her. Spann was no one's cat's paw; he was the monkey. He wanted to get rid of her, and did so with his own paws, rather than enlisting some hapless cat to do so. That in any event is the plaintiff's claim.

As for " 'motivating factor' causation," that's an allusion to a doctrine that the Supreme Court in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274 (1977), created for use in civil rights suits alleging violations of the First Amendment, and that Congress added to Title VII, with a refinement noted below, in 1991. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 92-95, 101-02 (2003). If the plaintiff proves that the defendant's reasons for firing her included an unlawful reason—proves in other words that an unlawful intent was a "motivating factor" in the decision to fire or take other adverse action against her—but the defendant in turn proves that it would have fired her anyway, for a lawful reason, then she has not been hurt by the illicit motive and cannot recover damages, 42 U.S.C. §§ 2000e-2(m), -5(g)(2)(B)(ii); *Hossack v. Floor Covering Associates of Joliet, Inc.*, 492 F.3d 853, 860 (7th Cir. 2007); *Bobo v. United Parcel Service, Inc.*, 665 F.3d 741, 757 (6th Cir. 2012)**,** though an injunction, a declaratory judgment, or an award of attorneys' fees is permissible. 42 U.S.C. §§ 2000e-5(g)(2)(B)(i), (ii).

The "cat's paw" doctrine can be thought of as an application of the "motivating factor" doctrine; the monkey's malevolent intent is imputed to the employer. So if the employer can't show that the monkey's super-

visor, who did the actual firing (or took some other adverse employment action), had a lawful motive uncontaminated by the monkey that would have led the supervisor to fire the employee even without the monkey's interference, the employee is entitled to damages. See *Staub v. Proctor Hospital*, *supra*, 131 S. Ct. at 1192. But "motivating factor" is another irrelevance in this case. There's no evidence that had Spann not been in the picture the plaintiff would have been fired anyway. The defendant did not try to prove that—it denied having fired her.

Injecting "sole decisionmaker" into the jury's deliberations made the confusion complete. The company argued that the plaintiff hadn't been fired, not that, if Spann's telling her to clean out her locker and surrender her keys amounted to firing her, nevertheless he was put up to it by a superior, such as Colburne, who had had a lawful motive and hadn't been monkeyed. The company presented no evidence that another decisionmaker or other decisionmakers were involved in Spann's decision to order her to clean out her locker and return her keys. Since neither party presented evidence about whether other decisionmakers had been involved, and the plaintiff had the burden of proof, the requirement that to impose liability the jury had to find that Spann had been the "sole" decisionmaker amounted to directing a verdict for the employer.

From a legal as distinct from a factual standpoint, the case was simple and should have been presented in all its simplicity to the jury. Jurors are unlikely to under-

stand legal concepts that judges have difficulty under-standing. The plaintiff claimed that Spann had fired her because she was a woman and in retaliation for her complaining about his sexually offensive behavior and his discrimination in favor of his male subordinates. The defendant claimed that she had not been fired, but instead had been offered a transfer and had not responded to the offer and had quit when Spann told her to clean out her locker and turn in her keys, whereas if she had wanted to continue working she would have complained to Colburne, who had told her she wasn't being fired, and she would have accepted the offered transfer. The jury had to choose between these competing narratives. All the judge had to do was tell the jury that. The jury's note should have alerted him that the jurors were in all likelihood seriously confused.

The instruction and verdict form were unsound, as was the judge's response to the jurors' inquiry, and the errors were not harmless because a properly instructed jury might well have found in the plaintiff's favor. The judgment is therefore reversed and the case remanded for a new trial.

REVERSED AND REMANDED.