**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3047
_____

NANCY DOLAN,
Appellant

v.

PENN MILLERS INSURANCE COMPANY;
PENN SOFTWARE & TECHNOLOGY SERVICES
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3:09-cv-2041)
District Judge:  Honorable Malachy E. Mannion
_____

Submitted Under Third Circuit LAR 34.1(a)
March 20, 2015

Before: MCKEE, *Chief Judge*, FUENTES, and RENDELL[**], *Circuit Judges*.

(Filed: August 20, 2015)
_____

OPINION[*]
_____

---

[**] The Honorable Marjorie O. Rendell assumed senior status on July 1, 2015.

[*]This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge*

Nancy Dolan appeals the District Court's order granting Defendants' motion for summary judgment on her gender discrimination claims.[1] We affirm.

**I.**

In 2003, Penn Software and Technology Services ("PSTS") hired Nancy Dolan as a sales account executive.[2] Dolan reported to her boss, Frank Joanlanne, and worked closely with Michael Conway, the manager of network services. In 2004, Dolan first complained to Joanlanne that Conway excluded her from a meeting and that he would not work with a woman. Dolan argues that Conway's maltreatment persisted despite Joanlanne's intervention. According to Dolan, she complained to Joanlanne about Conway several more times, but the context and timing of these complaints are unclear.

In 2007, Joanlanne and Penn Miller Holding Company began having secret discussions about selling PSTS to Synergistics Networks ("Synergistics"). Synergistics requested that Dolan sign a non-disclosure agreement ("NDA") because she worked closely with PSTS clients, but she refused. Dolan was subsequently excluded from

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's order and will affirm only if, "viewing the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion, we conclude that a reasonable jury could not rule for the nonmoving party." *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 448 (3d Cir. 2015) (internal quotation marks omitted).

[2] PSTS and Penn Millers Insurance are both owned by Penn Miller Holding Company. Dolan's complaint improperly named Penn Millers Insurance as a defendant. The District Court found that there was no employment relationship between Penn Millers Insurance and Dolan, and we agree. *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992).

meetings that involved the company's pending sale to Synergistics. While Dolan concedes that Joanlanne frequently intervened on her behalf, she also maintains that he allowed Conway to mistreat her after refusing to sign the NDA.

In February 2008, Dolan learned that her employment would be terminated when Synergistics completed its purchase of PSTS. Joanlanne presented Dolan with a Separation and General Release Agreement, which offered her a $21,807 severance package. Dolan had twenty days to accept the agreement and when she failed to do so, the offer was withdrawn.

After she failed to accept the proposed Separation Agreement, Dolan sent Joanlanne a letter describing the terms she found acceptable, which included paying Dolan's full salary for three years and $50,000 to pursue a Master's Degree. In the same letter, Dolan alleged that Conway created a hostile work environment based on her gender. One week later, Dolan filed complaints with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Resources Commission ("PHRC"), alleging that she had been demoted and excluded from meetings based on her gender. PSTS investigated Dolan's complaints found no evidence supporting Dolan's claims.

In June 2008, Synergistics officially purchased PSTS, and Dolan's employment was terminated one month later. Unlike a handful of PSTS employees, Dolan was not transferred to Synergistics because it had no need for a sales manager. Dolan then filed a complaint against Defendants alleging gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 28 U.S.C. § 2000(e)(2)(a) and

the Pennsylvania Human Relations Act ("PHRA").[3] The District Court granted Defendants' motion for summary judgment on all claims. Dolan now appeals.

## II.

A. Title VII Hostile Work Environment Claim

To make a successful Title VII discrimination claim, a plaintiff must, among other things, show that she suffered intentional discrimination on the basis of gender.[4] A plaintiff may do so by showing she suffered an adverse employment action or that she endured a discriminatorily hostile work environment.[5] The relevant inquiry for a hostile environment claim is not whether a plaintiff's workplace was generally abusive or unpleasant, but whether the hostility was driven by intentional gender-based discrimination.[6]

Dolan maintains that Conway and Joanlanne created a discriminatorily hostile work environment by excluding her from meetings and singling her out to sign the NDA. Specifically, Dolan contends that Conway unfairly excluded her from one meeting in 2004 and one meeting in 2008. Dolan speculates that she was excluded from ten additional meetings prior to her termination, but she is unable to identify the subject

---

[3] Like the District Court, we do not separately address Plaintiff's PHRA claim because the analysis is "identical to a Title VII inquiry." *Scheidemantle v. Slippery Rock Univ.*, 470 F.3d 535, 539 n.5 (3d Cir. 2006).

[4] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008).

[5] *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013).

[6] *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006).

matter of such meetings or when they occurred. Overall, Dolan offers no evidence that Conway excluded her from such meetings based on her gender.

In addition, Dolan argues Joanlanne contributed to the hostile environment by allowing Conway to treat her poorly and requesting her to sign the NDA.[7] Dolan, however, concedes that Joanlanne frequently defended her, and that her working relationship with Conway improved when Joanlanne intervened. Moreover, Dolan offers no evidence that she was asked to sign the NDA for a discriminatory purpose. Defendants, on the other hand, have offered sufficient evidence that Dolan was asked to sign the NDA because the sale to Synergistics was privileged information, and Dolan worked closely with PSTS clients. Beyond these bare assertions, Dolan offers no evidence that Defendants created a discriminatorily hostile work environment based on gender. Accordingly, we affirm the District Court's decision on this claim.

B. Title VII Retaliation Claim

Dolan also argues that her termination constitutes Title VII retaliation. To establish a prima facie retaliation claim, "the plaintiff must show that: (1) the employee engaged in a protected employee activity; (2) the employer took an adverse employment

---

[7] Dolan briefly argues that Defendants are liable under "the cat's paw" theory of liability, but she does not explain how this theory is applicable to the facts here. "The cat's paw" liability can be invoked when an employee with discriminatory intent convinces a superior to take an adverse action against another employee. *Cook v. IPC Int'l Corp.*, 673 F.3d 625, 629 (7th Cir. 2012). The District Court found that Dolan offered no evidence that Conway influenced the company's decision to terminate Dolan's employment. We agree, and affirm the District Court's decision granting Defendants' motion for summary judgment on this claim.

action after or contemporaneous with the employee's protected activity; and (3) a causal link exists between the employee's protected activity and the employer's adverse action."[8] Unless "unusually suggestive," timing alone is insufficient to establish a causal link.[9]

Here, the first two elements are undisputed. Plaintiff engaged in protected activity when she filed complaints with Human Resources and the EEOC, and suffered an adverse employment action when her employment was terminated three months later. The question is whether there is a causal connection between Dolan's complaints and her subsequent termination. Dolan filed her complaints on April 8, 2008 and was terminated on July 3, 2008. A proximity of three months is not "unusually suggestive," and is insufficient to establish a causal connection.[10] Moreover, Defendants have offered substantial evidence that Dolan was terminated because Synergistics purchased PSTS and the sales manager position no longer existed. Because Plaintiff has not established a causal connection between her protected activity and subsequent termination, we also affirm the District Court's decision on this claim.[11]

### III.

When viewing the evidence in the light most favorable to the plaintiff, we believe no reasonable jury could hold in Dolan's favor regarding her Title VII discrimination and

---

[8] *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 279 (3d Cir. 2000).

[9] *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d. Cir. 1997).

[10] *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (holding that three weeks is not unduly suggestive of causation).

[11] *See Farrell*, 206 F.3d at 279.

retaliation claims.[12] Accordingly, we affirm the District Court's order granting Defendants' motion for summary judgment.

---

[12] *See E.E.O.C.*, 778 F.3d at 448.