In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

Nos. 23-2973 & 23-3096

REPUBLIC TECHNOLOGIES (NA), LLC and
REPUBLIC TOBACCO, L.P.

*Plaintiffs-Appellants, Cross-Appellees*,

*v.*

BBK TOBACCO & FOODS, LLP,

*Defendant-Appellee, Cross-Appellant*.

———————————

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:16-cv-03401 — **Thomas M. Durkin**, *Judge*.

———————————

ARGUED SEPTEMBER 12, 2024 — DECIDED APRIL 25, 2025

———————————

Before HAMILTON, SCUDDER, and LEE, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Plaintiff Republic Technologies and defendant BBK Tobacco (known as "HBI") compete in the market for organic hemp rolling papers for cigarettes, regardless of the type of dried leaves burned in them. Plaintiff Republic manufactures and markets a brand of rolling papers known as "OCB," while defendant HBI markets papers manufactured by others, including an in-house brand known

as "RAW." Republic sued HBI in 2016 seeking a declaration that the trade dress for Republic's OCB papers did not infringe HBI's trade dress for its RAW papers. Republic later amended its complaint to accuse HBI of false advertising in violation of state and federal law. HBI counterclaimed, asserting as relevant to this appeal that OCB's trade dress actually did infringe HBI's trade dress for RAW papers. The case was tried to a jury in 2021, resulting in a mixed verdict on the infringement claims. The district court later entered a permanent injunction against some of HBI's advertising practices.

Both sides have appealed, raising just a few discrete issues. Republic argues that the district court's response to a jury question failed to clarify properly that HBI could be liable under the federal Lanham Act if its advertising misled commercial middlemen (rather than individual smokers). Republic also argues that the jury's finding that its OCB trade dress infringed RAW's trade dress was unsupported by the evidence. On cross-appeal, HBI contends that the district court's injunction is unduly vague and improperly applies nationwide. We affirm the judgment of the district court in all respects.

I. *Background*

   A. *Factual Background*

Republic owns and operates facilities where it manufactures OCB papers, which it sells to wholesale distributors and large retailers. It began selling organic hemp rolling papers in Europe in 2010 and started its United States operation in 2014. As part of its initial U.S. sales strategy, Republic sold a 24-

pack of OCB organic hemp rolling papers for a discounted price of 99 cents.

HBI has been selling RAW rolling papers in the United States since 2009. Unlike Republic, it does not manufacture its own "paper booklets." HBI acquires the RAW-branded booklets from an entity called Iberpapel, located in Spain. Iberpapel, in turn, obtains rolls of paper—which it packages into booklets—from paper mills. HBI sells the booklets to "a wide variety of customers ranging from small mom and pops, like smoke shops, convenience stores, grocery stores, liquor stores, all the way up through small distributors, regional distributors, and large chains like Sam's Club or Costco."

HBI's marketing strategy included a series of claims that Republic says are false:

—RAW papers are made from organic hemp

—RAW papers are the "world's first" or "world's only" organic hemp rolling papers

—RAW papers are made using wind power

—RAW papers are made from "unrefined" natural hemp

—RAW papers are made using "Natural Hemp Gum"

—RAW papers are made in Alcoy, Spain

—A portion of profits from RAW products goes to the "RAW Foundation," which uses those funds to save lives worldwide

—HBI's owner, Josh Kesselman, invented rolling paper "cones."

See also dkt. 925 at 3–4 (permanent injunction ordering HBI to refrain from making many of these statements). These statements served as the basis for Republic's false advertising claims under state and federal law.

B.  *Procedural Background*

In February 2016, HBI's counsel sent Republic a letter asking Republic to change OCB's trade dress to eliminate "the substantial similarity between the package designs and any consumer confusion over whether the OCB Organic Hemp rolling papers originate [from], or are otherwise associated with, the RAW® Organic Hemp rolling papers sold by" HBI. The next month, in March 2016, Republic filed this lawsuit in the Northern District of Illinois seeking a declaration that its trade dress—principally its package design—did not infringe HBI's trade dress. Republic later amended its complaint to allege unfair competition and deceptive advertising under the federal Lanham Act, 15 U.S.C. § 1125(a), Illinois common law, and the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"), 815 Ill. Comp. Stat. 510/2 (2024). HBI counterclaimed, asserting trade dress infringement and copyright infringement.

At trial the court gave an agreed jury instruction on Republic's Lanham Act false advertising claim. It explained that, for the jury to find HBI engaged in false advertising, it had to find that HBI made a misleading statement that "conveys a false impression and actually misleads a consumer" and that the "deception was likely to influence the purchasing decisions of consumers."

On the second day of jury deliberations, the court received several questions from the jury. One asked: "Is there a

definition of 'consumer'? Is that only the End User of the product or including anyone who purchases the product?" The parties disagreed on how to respond. The court held an off-the-record conversation on the question and upon return stated its view that "the answers are contained in the instructions." Republic objected, arguing that when there is "a clear answer, as a matter of law, … we ought to give it to the jury." The court noted the objection and nonetheless sent a note to the jury stating: "As to your questions, I can only advise you (at this time) to refer to and review *all* the instructions … including the cautionary instructions."

The jury returned a verdict against Republic on its federal Lanham Act false advertising claims but for Republic on its common law and IUDTPA claims. The verdict form required specific findings on which statements by HBI constituted false advertising only if the jury found for Republic on the Lanham Act claim. Because it did not, the parties were left with a verdict form assigning liability to HBI under Illinois law but without findings as to which statements or categories of statements constituted "unfair trade practices."

Republic filed a motion seeking a permanent injunction based on the jury's having found HBI liable under the IUDTPA. HBI opposed the motion but told the court that it found the trial to be "something of a 'wake up call' about the importance" of carefully confining its advertising to statements "that either clearly constitute permissible salesmanship (e.g. 'great tasting') or for which the company maintains tangible, objective verification." Republic later submitted a draft injunction that included a slightly modified version of HBI's statement, requiring HBI's advertisements to "either clearly constitute permissible opinion … or be factual

statements for which HBI maintains tangible, objective, verification." HBI objected, but the district court included that term in the permanent injunction.

The jury also found that Republic's trade dress for its 99-cent OCB papers infringed HBI's trade dress for its RAW papers. Republic moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), arguing that the different large capital letters on the OCB and RAW packages required a finding of non-infringement. It also filed a Rule 59 motion for a new trial on its false advertising claim, arguing that the court did not clear up the jury's "consumer" confusion with "concrete accuracy." Dkt. 937 at 6, quoting *United States v. Durham*, 645 F.3d 883, 894 (7th Cir. 2011). The district court denied both motions.

II. *Discussion*

We first address Republic's request for a new trial on the jury's question about a "consumer," then Republic's motion for judgment as a matter of law on HBI's trade dress claim, and finally HBI's challenge to the terms and geographic scope of the permanent injunction.

A. *The Jury's Question*

Republic argues that the district court should have granted its motion for a new trial because the court erroneously referred the jury back to the initial instructions instead of clarifying who could be a "consumer" under the false advertising instruction. We find that the district court did not abuse its discretion in responding to the jury's question or in denying Republic's motion for a new trial.

A trial judge tries to give a jury instructions on the law that applies to the issues the jury must decide, striking a balance

between giving the jury all it needs but without unnecessary detail. From the trial judge's point of view, it's helpful if the parties agree to all or nearly all of the instructions, as in this case. Despite those efforts, juries sometimes ask the judge during deliberations for further explanations.

That happened here. The parties agreed that the jury should be instructed in accordance with Seventh Circuit Pattern Instruction 13.3.1 on the elements of the Lanham Act claim. The key portion of that instruction read this way:

> For Republic to succeed on its claim of false advertising, Republic must prove five things by a preponderance of the evidence:
>
> 1. HBI made a false or misleading statement of fact in a commercial advertisement about the nature; quality; characteristic; or geographic origin of its own product or Republic's product. A statement is misleading if it conveys a false impression *and actually misleads a consumer*. A statement can be misleading even if it is literally true or ambiguous.
>
> 2. The statement actually deceived or had the tendency to deceive a substantial segment of HBI's audience.
>
> 3. The deception was *likely to influence the purchasing decisions of consumers*....

Dkt. 801 at 3 (emphasis added).

During deliberations, the jury sent the court a note asking whether "consumer" could be "only the End User of the product or including anyone who purchases the product?"

After consulting with counsel, the court responded that the jury should "refer to and review *all* the instructions including the cautionary instructions." Republic objected to the court's decision not to issue a supplemental instruction that would have made more explicit that Republic could prove its claim by showing that commercial middlemen, as distinct from end users, could be or were deceived.

We review for abuse of discretion a district court's response to a jury question. *United States v. Funds in the Amount of One Hundred Thousand & One Hundred Twenty Dollars ($100,120.00)* ("*Funds*"), 901 F.3d 758, 769 (7th Cir. 2018). Our review focuses on "whether the response: (1) fairly and adequately addressed the issues; (2) correctly stated the law; and (3) answered the jury's question specifically." *Stevens v. Interactive Financial Advisors, Inc.*, 830 F.3d 735, 741 (7th Cir. 2016). And while we have said that "the [district] court has an obligation to dispel any confusion quickly and with concrete accuracy," *United States v. Sims*, 329 F.3d 937, 943 (7th Cir. 2003), it is also true that "a judge need not deliver instructions describing all valid legal principles." *Gehring v. Case Corp.*, 43 F.3d 340, 343 (7th Cir. 1994). Further, we will reverse "only if the response resulted in prejudice." *Funds*, 901 F.3d at 769.[1]

It is rare for us to vacate a judgment based on a district court's decision not to issue a clarifying response when the initial instruction was a correct statement of law. See, e.g., *Knowlton v. City of Wauwatosa*, 119 F.4th 507, 521 (7th Cir. 2024)

---

[1] We also review for an abuse of discretion the district court's denial of Republic's Rule 59 motion for a new trial. *O'Donnell v. Caine Weiner Co.*, 935 F.3d 549, 552 (7th Cir. 2019). Because the district court did not abuse its discretion in responding to the jury's question, it also did not abuse its discretion in denying the motion for a new trial.

(decision to refer jury back to original, correct instruction was not an abuse of discretion; standard "does not require the 'best' answer"); *Durham*, 645 F.3d at 894 ("a judge does not err by instructing the jury to re-read the instructions in response to a question, so long as the original jury charge clearly and correctly states the applicable law."). Such caution on the part of a trial judge is understandable. An incorrect response could prejudice either party and jeopardize the eventual verdict. "As long as the original instructions accurately and understandably state the law, referring a jury back to those instructions can be the most prudent course…. Deviating from these instructions creates the needless risk of reversible error." *Emerson v. Shaw*, 575 F.3d 680, 685–86 (7th Cir. 2009) (affirming denial of habeas relief).[2]

The district judge here had to choose between referring the jury back to an agreed instruction on the elements of the Lanham Act claim or issuing a disputed answer resolving whether Lanham Act liability can be based on a misleading statement to an intermediate purchaser. See *Republic Technologies (NA), LLC v. BBK Tobacco & Foods, LLP* ("*New Trial Order*"), No. 16-CV-3401, 2023 WL 6198827, at *4 (N.D. Ill. Sept. 22, 2023) ("This Court decided not to provide a supplemental instruction because the parties disagreed on the

---

[2] Republic cites *United States v. Fisher*, 648 F.3d 442, 447–49 (6th Cir. 2011), for the premise that a court can abuse its discretion by failing to clarify an important legal issue not covered by the initial jury instructions. We agree with the general premise, but the *Fisher* opinion also recognized that jury questions can pose nuanced problems that district courts have considerable discretion in solving. In the end, *Fisher* affirmed a district court's decision not to answer a question that was "not relevant to the crimes charged." *Id.* at 448. *Fisher* does not show that the court abused its discretion in this case.

correct answer to the question….”). This juxtaposition—and the absence of a clear answer in the statute or in our case law—persuades us that the district court’s decision to refer the jury back to the original instructions was not an abuse of discretion. See *United States v. Mealy*, 851 F.2d 890, 902 (7th Cir. 1988) (“If the original jury charge clearly and correctly states the applicable law, the judge may properly answer the jury’s question by instructing the jury to reread the instructions.”). In this case, the court heard both sides, weighed the choices, and stuck with the original instruction that both sides had approved. That was not an abuse of discretion. See *Knowlton*, 119 F.4th at 521 (not abuse of discretion to refer jury back to original instruction when question involved clarification of agreed initial instruction).

Republic also argues that the district court applied the wrong legal standard when assessing whether Republic was prejudiced by the district court’s response. According to Republic, the district court required it to show that a properly instructed jury “must have” found in its favor when it should have needed to show only that a properly instructed jury “might well have” found in its favor.

The district court did not apply an incorrect legal standard. It used the phrase “must have” only to explain Republic’s argument: “Republic reasons that the jury must have inferred that ‘consumers’ means ‘end users.’” *New Trial Order*, 2023 WL 6198827, at *5. This is a fair characterization of Republic’s position both in the district court and on appeal. For example, in its opening brief on appeal, Republic argues: “the very fact that the jury asked the question—whether a ‘consumer’ is ‘only the End User of the product or including anyone who purchases the product?’—indicates that at least

some of the jurors viewed the question as potentially dispositive."

The district court cited *Cook v. IPC Int'l Corp.*, 673 F.3d 625, 629 (7th Cir. 2012), for the point that Republic now argues it overlooked: that a party is prejudiced by an instructional error when "a properly instructed jury might well have found in the plaintiff's favor." *New Trial Order*, 2023 WL 6198827, at *4, quoting *Cook*, 673 F.3d at 629. This is an accurate statement of the law, though we do not mean to imply that the standard for prejudice is a precise one. See *Boyd v. Illinois State Police*, 384 F.3d 888, 894 (7th Cir. 2004) (erroneous supplemental jury instruction would require new trial only if "jury was likely to be confused or misled"); see also, e.g., *Jimenez v. City of Chicago*, 732 F.3d 710, 717 (7th Cir. 2013) (affirming where district court refused narrower jury instruction requested by defense: "Even if we believe that the jury was confused or misled, we would need to find that the defendants were prejudiced before ordering a new trial.").

Like the district court, we are not persuaded that a different response to the jury question "might well have" or was "reasonably likely" to have caused the jury to return a verdict for Republic. This is so for two reasons.

First, the closest thing to an answer to the jury's question in the original instructions resolved the issue in Republic's favor. The second bullet point of the Lanham Act instructions—sandwiched between the two provisions referring to "consumers"—required the jury to find that the statement "actually deceived or had the tendency to deceive a substantial segment *of HBI's audience*." Dkt. 801 at 3 (emphasis added). By referring the jury to the initial instructions, the court referred it to this instruction—which

implies that the relevant purchasing public is "HBI's audience," whoever that may be. See *Knowlton*, 119 F.4th at 521 (district court did not abuse discretion by referring jury to original instruction containing broad language bearing on jury's question); *Durham*, 645 F.3d at 894 (telling jury to re-read instructions was not abuse of discretion when instructions addressed jury's question).

Second, even if the jury believed that only "end users" could be "consumers," Republic presented evidence at trial that HBI's statements misled that group. For example, the jury heard testimony from Republic executive Seth Gold that HBI's claim to sell the world's first and only organic hemp rolling papers could influence "a very large number of … potential purchasers." Gold's testimony focused on the public appeal of organic products to ultimate purchasers. Gold also testified to the likely effect on end users of HBI's statements about "natural gum," "Alcoy, Spain," wind power, and charitable donations. He told the jury that resellers also care about these statements because they know that consumers make purchasing decisions based on such factors.[3]

Republic presented evidence at trial regarding the possibility of HBI's statements misleading both end users and intermediaries. It now seeks a new trial because the district court did not point the jury in a particular direction. The district court's decision not to do so was not an abuse of

---

[3] As the district court noted, the jury may have decided not to credit this evidence on whether anyone, whether an end user or distributor, was misled by the deceptive advertising. *New Trial Order*, 2023 WL 6198827, at *6. The point is that Republic's trial evidence was not focused enough on demonstrating confusion among middlemen for us to conclude that it was prejudiced by the district court's response.

discretion. See *EEOC v. AutoZone, Inc.*, 809 F.3d 916, 923 (7th Cir. 2016) (affirming denial of motion for new trial and finding no prejudice from supposedly confusing jury instructions when appellant had ability to make argument to the jury).

B. *Trade Dress Infringement*

Republic next argues that the district court erred by denying its Rule 50 motion for judgment as a matter of law on HBI's trade dress claim. The Lanham Act, 15 U.S.C. § 1125(a), protects against infringement of a product's trade dress, which is "a product design that is so distinctive it identifies the product's source." *Bodum USA, Inc. v. A Top New Casting Inc.*, 927 F.3d 486, 491 (7th Cir. 2019). Trade dress can include the product's "size, shape, color, graphics, packaging, and label." *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 20 (7th Cir. 1992), quoting *Vaughan Manufacturing Co. v. Brikam Int'l, Inc.*, 814 F.2d 346, 348 n.2 (7th Cir. 1987). "A party may obtain relief under 15 U.S.C. § 1125(a) for trade dress infringement if it can prove (1) its trade dress is protectible; and (2) its trade dress was infringed." *Badger Meter, Inc. v. Grinnell Corp.*, 13 F.3d 1145, 1151 (7th Cir. 1994).

HBI's trade dress was protectible.[4] The disputed question on appeal is whether a reasonable jury could find that

---

[4] Republic's reply brief asserts in a footnote that HBI's claim relies on elements of trade dress that are either functional or generic and are therefore not protectible. If Republic meant to offer this point as a reason to reverse, it should have been part of its opening brief on appeal. Its silence in the opening brief waived the argument. See *Bernard v. Sessions*, 881 F.3d 1042, 1048 (7th Cir. 2018). In any event, even where functional or generic elements of trade dress are not protectible individually, they can be elements of a holistic trade dress that is protectible. See *Computer Care*

Republic's OCB trade dress infringed HBI's RAW trade dress. That requires us to assess whether HBI can show that "the similarity of [OCB's] trade dress to that of [RAW] is such as to create a likelihood of confusion on the part of consumers as to the source of the goods." *Id.* The district court concluded that the jury finding of likely confusion was supported by sufficient evidence. We review the court's decision de novo, taking the evidence in the light most favorable to the verdict, *Bodum USA*, 927 F.3d at 491, but there must be more than "a mere scintilla of evidence" to support the verdict. *May v. Chrysler Group, LLC*, 716 F.3d 963, 971 (7th Cir. 2013), quoting *Hossack v. Floor Covering Assocs. of Joliet, Inc.*, 492 F.3d 853, 859 (7th Cir. 2007).

Republic sold two OCB products relevant to this appeal, a promotional 99-cent 24-pack with red lettering, and a full-priced 36-pack with brown lettering:



99-cent OCB promotional packaging with red lettering. Dkt. 954-8.

---

*v. Service Systems Enterprises, Inc.*, 982 F.2d 1063, 1069 (7th Cir. 1992) ("Where the plaintiff's overall trade dress is distinctive, the fact that it uses descriptive (or generic) elements does not render it nonprotectable.").



Full-priced OCB 36-pack with brown lettering. Dkt. 954-16.

HBI's RAW packaging also had bright red lettering:



RAW packaging. Dkt. 955-6.

The jury found that Republic's OCB 99-cent red packaging infringed the RAW trade dress but that its full-priced brown packaging did not. Republic now argues that no reasonable person "could possibly confuse Republic's OCB rolling papers for HBI's RAW papers given the prominent display of the brand names in 'great big letters' in the center of the package …." Republic Br. at 35. We see the point, but on this record, at least, the different letters and names are a factor for the jury to weigh, not a feature that defeats the claim as a matter of law.

Republic's "great big letters" argument goes to the weight, not the sufficiency, of the evidence of similarity. See *Badger*

*Meter*, 13 F.3d at 1152–53 (affirming denial of Rule 50 motion and noting similar arguments went to weight, not sufficiency). Assessing the likelihood of confusion between two trade dresses involves consideration of seven factors: "(1) the similarity between the marks; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care consumers are likely to use; (5) the strength of plaintiff's mark; (6) actual consumer confusion; and (7) the defendant's intent to 'palm off' its product as that of another." *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 425 (7th Cir. 2019), quoting *Sorensen v. WD-40 Co.*, 792 F.3d 712, 726 (7th Cir. 2015). "No one factor is dispositive." *Id.* While Republic challenges only "similarity between the marks," in considering the challenge to the verdict, we must take all of them into account.

HBI presented substantial evidence on five of the six other "likelihood of confusion" factors. The underlying products are very similar, even according to Republic's advertising materials, and have an overlapping manner of use. The jury also heard expert testimony that "some consumers are likely to make quick decisions, without paying much attention when choosing cigarette rolling papers." Some evidence tended to show actual customer confusion, including statements from HBI executives that customers and retailers wondered about the relationship between OCB and RAW. The jury also received competing expert surveys regarding consumer confusion. We reiterate here that the Lanham Act "requires the plaintiff to show 'a likelihood of confusion,' a question of fact in which 'actual confusion' is but a single nondispositive part." *NBA Properties, Inc. v. HANWJH*, 46 F.4th 614, 626 n.18 (7th Cir. 2022), quoting *Board of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel*

*Co.*, 550 F.3d 465, 478 (5th Cir. 2008). Finally, HBI presented testimony indicating that a Republic employee conducted market research on the HBI product and proposed that Republic use a similar color scheme in releasing its own product in Europe—allowing a reasonable jury to infer that Republic intended to "palm off" its product as at least related to HBI's. All of this evidence, while contested, was available for the jury to weigh in its holistic assessment of likelihood of confusion. See *Junkert v. Massey*, 610 F.3d 364, 367 (7th Cir. 2010) (when reviewing Rule 50 motion, we take evidence in light most favorable to jury's verdict).

The jury's finding of likely confusion was not "irrational." *Bodum USA*, 927 F.3d at 491. The jury had the opportunity to view side-by-side comparisons of the trade dresses and saw pictures of the products next to each other on store shelves (as



RAW and OCB products side-by-side in a smoke shop.

displayed in the photograph). It also heard extensive testimony comparing features of the trade dresses other than the block letters. Both had a brown button on the side, distressed fonts, textured backgrounds, green accents, large red fonts, and three-letter labels. Notably, the jury found that Republic's OCB red 99-cent packaging infringed on RAW's trade dress while its brown full-priced packaging design did not. This contrast suggests the jury considered carefully whether each specific package design was likely to confuse—and found that only the 99-cent packaging was, probably because of the comparable red lettering. Republic asks us to reweigh the evidence, which of course is not our role on appeal. *Crompton v. BNSF Railway Co.*, 745 F.3d 292, 295–96 (7th Cir. 2014) (we "will overturn a jury verdict 'only when there is a complete absence of probative facts to support the conclusion reached.'" (quoting *Lavender v. Kurn*, 327 U.S. 645, 653 (1946)).

To be sure, the different product names were a factor weighing against a finding of infringement. The distinct product names factor strongly into the "similarity between the marks" analysis, and they make this case a relatively close one, even with our deferential review under Rule 50. But the different names do not require judgment of non-infringement as a matter of law. That was implicit in the Supreme Court's decision in *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992), and explicit in the Fifth Circuit's decision that was affirmed. Both courts affirmed a jury verdict on trade dress infringement notwithstanding that one party's restaurants were named "Two Pesos" and the other party's were called "Taco Cabana" and "TaCasita." See *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1117 (5th Cir. 1991). In *Two Pesos*, the brothers who owned the plaintiff restaurants divided the

restaurants between themselves just days before filing suit against the allegedly infringing Two Pesos restaurant chain. One brother kept the "Taco Cabana" name while the other adopted "TaCasita"—but both kept the original trade dress. The defendant, Two Pesos, argued that it could not be "accountable for confusion in a market already subject to the confusion perpetuated by Taco Cabana and TaCasita." *Id.* at 1123. While the Supreme Court did not address this argument, the Fifth Circuit rejected it, explaining that "a consumer who assumes some affiliation between Taco Cabana and TaCasita assumes correctly…. An equivalent assumption about Two Pesos, however, is incorrect, and properly indicative of the market confusion for which the Lanham Act provides redress." *Id.*

The Fifth Circuit's discussion helps show why the different brand names in this case do not require us to set aside the jury's verdict. Products may share an affiliation—reflected by similar trade dress—despite different names. Evidence in this record suggests that some rolling paper consumers thought that might be true of OCB and RAW: the jury heard testimony from HBI representatives that retailers asked whether OCB was a RAW product. See, e.g., dkt. 854 at 1946; dkt. 989-1 at 10–11. As in *Two Pesos*, this evidence is "properly indicative of the market confusion for which the Lanham Act provides redress." 932 F.2d at 1123; see also *Computer Care v. Service Systems Enterprises, Inc.*, 982 F.2d 1063, 1071 (7th Cir. 1992) (affirming finding on likelihood of confusion between two software companies despite different names: "Finally, it seems quite likely that the similarity of the parties' trade dress could lead dealers to believe that the two companies are associated in some way.").

Republic relies on the Second Circuit's decision in *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.* for its argument that the distinct names require judgment as a matter of law. 973 F.2d 1033 (2d Cir. 1992). There, the Second Circuit concluded that while one company's "Tylenol PM" packaging shared many elements similar to "Excedrin PM," including color scheme and font, the "prominence of the trade names on the two packages weighs heavily against a finding of consumer confusion resulting from the overall look of the packaging." *Id.* at 1045–46. Accordingly, it ruled that there was "no likelihood of confusion between these two products" and reversed the district court's preliminary injunction. *Id.* at 1047.

We agree with the Second Circuit's general point that the "presence and prominence of markings tending to dispel confusion as to the origin, sponsorship or approval of the goods in question is highly relevant to an inquiry concerning the similarity of the two dresses," *id.* at 1046, but it does not persuade us to set aside this jury's verdict. Notably, the Second Circuit in *Bristol-Myers Squibb* reviewed a district court's findings of fact on a preliminary injunction. While it vacated the injunction, it did not go so far as to dismiss the action, acknowledging that the plaintiff could "present evidence at trial—numerous instances of actual confusion between the two products by actual customers for example—that might lead to a change in the ultimate conclusion regarding the likelihood of consumer confusion." *Id.* at 1049.

Here, we have a jury verdict on likelihood of confusion. Our review is therefore more deferential both because the verdict represents a final (not preliminary) finding of fact and because we reverse jury verdicts only "when there is a complete absence of probative facts to support the conclusion

reached." *Lavender*, 327 U.S. at 653. As explained above, evidence in the record supports this jury verdict. See *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 637 (7th Cir. 1999) ("There are, of course, situations where distinct labeling or packaging of products will not prevent confusion.").

While it might be a slight overstatement to say that "the question of likelihood of confusion is all fact and no law," *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1428 (7th Cir. 1985), the point is close to the truth. See also *Uncommon*, 926 F.3d at 425 (likelihood of confusion is a question of fact). This properly instructed jury found that Republic's trade dress created a likelihood of confusion. Sufficient evidence supports that finding, so we affirm the district court's denial of Republic's motion for judgment as a matter of law.

C. *The Permanent Injunction*

That brings us to HBI's cross-appeal, which contends the district court's injunction is improperly vague and overbroad. HBI also argues that the injunction's nationwide scope is incongruous with its source—Illinois law—so that the injunction should be limited to "conduct occurring primarily and substantially within the State of Illinois." "[W]e review the district court's decision to grant a permanent injunction for an abuse of discretion, though we conduct an independent review of any underlying legal determinations." *GEFT Outdoor, LLC v. Monroe County*, 62 F.4th 321, 326 (7th Cir. 2023). We affirm the district court's permanent injunction.[5]

―――――――――――

[5] HBI also asserts in passing that the injunction is "improperly unlimited in time." That argument is underdeveloped and therefore forfeited. See *Jones v. Clark*, 630 F.3d 677, 684 (7th Cir. 2011) (underdeveloped arguments can be considered either waived or forfeited). That forfeiture would

1. *Specificity of the Injunction's Terms*

The injunction requires that all HBI advertising or promotional statements "shall either clearly constitute permissible opinion (e.g., that something is 'great tasting') or be factual statements for which HBI maintains tangible, objective, verification." HBI argues that this provision is unduly vague and overbroad.[6]

A district court's discretion in crafting an injunction is governed by Federal Rule of Civil Procedure 65(d). In relevant part, Rule 65(d)(1) requires an order granting any injunction to "state its terms specifically" and to "describe in reasonable detail … the act or acts restrained or required." We have emphasized that district courts may craft injunctions that are "broad enough to be effective, and the appropriate scope of the injunction is left to the district court's sound discretion." *Russian Media Group, LLC v. Cable America, Inc.*, 598 F.3d 302, 307 (7th Cir. 2010) (affirming preliminary injunction). Discretion is especially important when an enjoined party's "proclivity for unlawful conduct has been shown." *Id.*, quoting *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949); see also *Lineback v. Spurlino Materials, LLC*, 546 F.3d

not, however, prevent the district court from revisiting the issue in the future.

[6] The injunction also said that HBI "agreed" to the verification requirement, a point that HBI disputes on appeal. HBI's possible consent is beside the point. The district court entered the injunction to vindicate Republic's rights under unfair competition law, not because HBI agreed to each term. In fact, the court specifically rejected HBI's request to delete the verification requirement. *Republic Technologies (NA), LLC v. BBK Tobacco & Foods, LLP*, No. 16-cv-03401, 2022 WL 17477602, at *6 (N.D. Ill. Dec. 6, 2022).

491, 505–06 (7th Cir. 2008) (affirming injunction with prohibition broader than employer's proven violations because employer had maintained strategy of obstruction). Ordinarily the district court is "in the best position to weigh these interests." *H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 843 (7th Cir. 2012).

HBI argues that the injunction is unduly vague because it is unclear when a statement "clearly constitute[s] permitted opinion," or when a statement is factual and requires "tangible, objective, verification." This argument reflects HBI's dissatisfaction with the lack of sharp contours in false advertising law. We have explained that a "prohibition on implied falsehoods makes the use of somewhat inexact language unavoidable." *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 384 (7th Cir. 2018); see also *Scandia Down*, 772 F.2d at 1432 ("When the difficulty stems from the inability of words to describe the variousness of experience, the court may prefer brief imprecise standards to prolix imprecise standards."). In *Eli Lilly*, for instance, we affirmed a preliminary injunction against a dairy company's misleading portrayal of a drug product. The injunction prohibited the dairy company from using one particular advertisement but also barred it from making "substantially similar" advertisements. 893 F.3d at 384. The dairy company appealed, arguing (as HBI does here) that the language was vague and overbroad. We affirmed because the injunction "essentially prohibits [the company] from portraying [the drug] as something it's not. That's sufficiently definite …." *Id.* at 385.

We reach the same conclusion here. Courts regularly differentiate between statements of opinion and fact when assessing false advertising claims, as well as claims in other

areas of the law. Likewise, businesses must ordinarily ensure that their advertisements are factually accurate. See, e.g., *Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 907 (7th Cir. 2007) (holding false statements of material fact are prohibited by Lanham Act, and assuming without deciding that same is true under IUDTPA); *Tri-Plex Tech. Services, Ltd. v. Jon-Don, LLC*, 2024 IL 129183, ¶ 16, 241 N.E.3d 454, 460 (IUDTPA prohibits conduct that creates a "likelihood of confusion or misunderstanding"), citing 815 Ill. Comp. Stat. 510/2(a)(12). This injunction is "sufficiently definite" because it reflects that legal reality. It simply adds some requirements—like maintaining factual verification—to ensure that HBI complies with the law.

The injunction in this case does not order HBI to obey "an abstract conclusion of law [rather than] an operative command capable of 'enforcement.'" See *Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 74 (1967). The facts of *International Longshoremen* make the point. In that case, a district court ordered the petitioners to "comply with and abide by" an arbitral award determining that the respondent's reading of a contract was correct. When the petitioners asked the court what the order meant, the court responded: "That you will have to determine, what it means." *Id.* at 70. Understandably, the Supreme Court ruled that this explanation did not satisfy Rule 65(d) because it "did not state in 'specific terms' the acts that it required or prohibited." *Id.* at 76 (cleaned up), quoting Rule 65(d) (1966).

HBI has substantially more guidance here. The injunction prohibits it from making nine categories of statements and, to safeguard against future violations, requires HBI to take concrete steps to assure the court of the factual veracity of

additional factual representations. As Rule 65(d) requires, this injunction "describe[s] in reasonable detail … the act or acts restrained or required."

One more point. HBI says it fears it might be haled into court to face contempt proceedings on the basis of "harmless and immaterial statements," such as that rolling paper is brown, or that rolling papers were used in Catalonia in the 1600s. While HBI is right that the law does not typically mandate affirmative verification of factual statements, "[a] federal court has broad power to restrain acts … whose commission in the future unless enjoined, may fairly be anticipated from the defendant's conduct in the past." *NLRB v. Express Publishing Co.*, 312 U.S. 426, 435 (1941).

Here, the district court found it was appropriate to require HBI to maintain verification for its future factual advertisements given HBI's proven tendency to make unsupported claims in advertising. The court concluded that Republic was likely to suffer future harm without an injunction because "HBI's untruthful or at least misleading statements are likely to cause consumers to choose HBI's products over Republic's products on the basis of those statements…." *Republic Technologies (NA), LLC v. BBK Tobacco & Foods, LLP*, No. 16-cv-03401, 2022 WL 17477602, at *2 (N.D. Ill. Dec. 6, 2022). The court also noted in a related discussion about other terms that the injunction needed to be broad in order to be effective. *Id.* at *5 ("This would cause the injunction to be too narrow to be effective."). The court explained that "HBI has also shown a proclivity to attempt to evade court orders," and it cited precedents from the Supreme Court and this court affirming broadly worded injunctions

against parties who "demonstrated a tendency to evade or violate court orders." *Id.* at *5–6.

By mandating that HBI verify the accuracy of its factual statements—or otherwise use opinions—the district court crafted a remedy that it reasonably believed would deter future violations that it could "fairly" anticipate from HBI's conduct. See *Express Publishing*, 312 U.S. at 435; *SEC v. Advance Growth Capital Corp.*, 470 F.2d 40, 54 (7th Cir. 1972) (reversing denial of injunction under Investment Company Act: "The purpose of injunctive relief is, after all, not to punish but to deter future violations, thus insuring general compliance with the broad remedial design of the legislation." (citing *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)). Accordingly, the court did not abuse its discretion in framing the injunction. See *H-D Michigan*, 694 F.3d at 843 ("the injunction must also be broad enough to be effective."); *Dexia Crédit Local v. Rogan*, 602 F.3d 879, 885 (7th Cir. 2010) (district court properly issued broad injunction: "When the district court fashioned the broad injunction, it noted the elaborate steps [defendant] had taken to evade creditors.").

### 2. *Nationwide Scope*

HBI's last argument is that the district court's injunction should be limited to "conduct occurring primarily and substantially within the State of Illinois." HBI contends that, because Illinois law serves as the basis for the injunction, it is improper to hold HBI to that standard nationwide. On the facts of this case, at least, we disagree and affirm the nationwide scope of the permanent injunction, subject of

course to the district court's continuing jurisdiction and power to modify the injunction.[7]

First, it is well established that a district court "exercising its equity powers may command persons properly before it to cease or perform acts outside its territorial jurisdiction." *Steele v. Bulova Watch Co.*, 344 U.S. 280, 289 (1952); see also Zayn Siddique, *Nationwide Injunctions*, 117 Colum. L. Rev. 2095, 2104 (2017) ("If an individual defendant is found to have a duty to act or refrain from acting in a certain way, and the court has jurisdiction over that defendant, that duty need not be geographically limited."). The important limiting principle is generally that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); accord, *City of Chicago v. Barr*, 961 F.3d 882, 920–21 (7th Cir. 2020) ("It is widely accepted—even by self-professed opponents of universal injunctions—that a court may impose the equitable relief necessary to render complete relief to the plaintiff …." (citing *Yamasaki*, 442 U.S. at 702)).

---

[7] HBI objected to the nationwide scope of the injunction in its initial briefing in the district court, and the district court did not resolve the issue. This apparent oversight does not prevent us from considering the question (notwithstanding that the parties expressly preserved for appeal only "disputed issues arising from prior Court orders."). See *United States v. Grandberry*, 730 F.3d 968, 980 n.10 (9th Cir. 2013) (parties disputed issue but district court did not address it in final order: "Whether that was due to an oversight or a conclusion that the issue was not properly raised, we do not know. … We therefore choose to decide the question—which was fully briefed before us—rather than declaring it forfeited.").

HBI argues that the nationwide scope of the injunction violates principles of comity and due process.[8] Its primary authority for this assertion is *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), where the Supreme Court assessed whether leaseholders from all 50 states could sue a Delaware corporation under Kansas law in Kansas state court for delayed royalty payments. The Court first explained: "There can be no injury in applying Kansas law if it is not in conflict with that of any other jurisdiction connected to this suit." *Id.* at 816. It then noted there were several potential conflicts in that case, including that interest rates in other states were lower than the Kansas rate, which dramatically increased the defendant's potential liability. *Id.* at 817–18. The Court ultimately remanded the case for the Supreme Court of Kansas to determine whether Kansas law conflicted "in any material way with any other law which could apply." *Id.* at 816.

*Phillips Petroleum* illustrates why, on the record before us, at least, we do not perceive a comity or due process problem here. As HBI notes, several states—including Arizona, where HBI is headquartered—have not adopted the Uniform Deceptive Trade Practices Act and have differences in their consumer protection laws. But HBI does not argue that any state permits false or misleading statements of fact in advertising. See, e.g., Ariz. Rev. Stat. Ann. § 44-1522(A) (2025) (unlawful practice to use a "false pretense, false promise, [or] misrepresentation … in connection with the sale or advertisement of any merchandise"); National Consumer

---

[8] HBI presents these as separate arguments, but they are essentially the same. Both turn on whether the injunction denies HBI the benefit of non-Illinois law. We address them together.

Law Center, *Consumer Protection in the States* 9 (2018) (every state has some version of an unfair and deceptive trade practices statute), available at https://www.nclc.org/wp-content/uploads/2022/09/UDAP_rpt.pdf
[ https://perma.cc/2BBD-JPZJ ].

Unlike the situation before the Supreme Court in *Phillips Petroleum*, HBI has not shown that Illinois unfair competition law differs from the law of other states in a way that is "material" to the injunction. See 472 U.S. at 816.[9] Regardless of any injunction, HBI should expect to have a legal obligation not to make false or deceptive statements in advertising in all 50 states. See *id.* at 822 ("When considering fairness in this context, an important element is the expectation of the parties."). Given the jury's finding that HBI either misrepresented certain goods or engaged in other conduct that similarly created a likelihood of confusion or misunderstanding, we see no reason to oblige Republic to file separate suits in all 50 states to vindicate its rights to be free from unfair trade practices—rights that come from well-established and relatively uniform principles of state law. Cf. *Curry v. Revolution Laboratories, LLC*, 124 F.4th 441, 462 (7th Cir. 2024) (considering nationwide conduct when assessing an Illinois punitive damages award and stating: "Curry did not need to file separate suits in all 50 states to vindicate his Lanham Act rights.").[10]

---

[9] The injunction has some other provisions that are not relevant to this appeal. HBI's briefs make clear that it is primarily concerned with the nationwide effect of the verification requirement.

[10] The jury's finding that the conduct underlying the injunction occurred "primarily and substantially in Illinois" is not to the contrary. The location of the harm for which the defendant is found liable does not

The district court will continue to exercise jurisdiction over the injunction in this case. It should continue to ensure that the injunction is "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Yamasaki*, 442 U.S. at 702; see also *United States v. Fisher*, 864 F.2d 434, 436 (7th Cir. 1988) ("when a court issues an injunction, it automatically retains jurisdiction to enforce it."). On the facts of this case, "complete relief" to Republic—which, as far as we can tell, competes with HBI in all 50 states—can include remedial measures like this injunction that apply nationwide. See Siddique, *supra,* 117 Colum. L. Rev. at 2116 (discussing challenges with nationwide injunctions based on state laws and stating: "The touchstone of complete relief is properly defining the geographic scope of an injury and then remedying that precise harm.").

However, if HBI engages in advertising activities unrelated to the facts at issue in this case—or that have no connection to Illinois—it may seek "clarification or modification" of the injunction from the district court to ensure that its activities do not run afoul of the injunction. See *H-D Michigan*, 694 F.3d at 847 (explaining that a party "may seek" "clarification or modification" of an injunction "from the district court in the first instance"); accord, *Carson v. Here's Johnny Portable Toilets, Inc.*, 810 F.2d 104, 105 (6th Cir. 1987)

---

alone limit a court's power to remedy that harm. See *Hart v. Sansom*, 110 U.S. 151, 155 (1884) ("equity acts *in personam*"); *Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 452 (1932) (Massachusetts district court issued injunction prohibiting company from selling hinged shoe lasts but company continued selling them in other states; Supreme Court explained that "decree was binding upon the respondent, not simply within the District of Massachusetts, but throughout the United States").

(affirming nationwide injunction based on state "right of publicity" law despite ambiguous legal status of such law elsewhere: "If the defendant should hereafter decide that it wants to use the phrase in a state (other than Michigan) where it believes such use would be legal but for the injunction, it will be free to seek a modification of the injunction from the district court at that time."). The district court will be best situated to determine whether "complete relief" requires applying the injunction to those not-yet-defined contexts, including possible advertising with no connection to Illinois or situations where the enjoined conduct might be legal in another state. See, e.g., *United States v. AMC Entertainment, Inc.*, 549 F.3d 760, 773 (9th Cir. 2008) (collecting similar cases and limiting geographic scope of injunction when injunction required conduct that Fifth Circuit had "judicially repudiated").

The injunction here is appropriately tailored to "provide complete relief" to Republic, see *Yamasaki*, 442 U.S. at 702, and the district court did not abuse its discretion or make a legal error by allowing the injunction to take effect nationwide. Factual differences relating to future HBI advertising campaigns may require a different conclusion, though, and the district court will be free to consider those issues they arise.

The judgment of the district court is AFFIRMED.

SCUDDER, *Circuit Judge*, concurring. The court's opinion is very well done, and I join it in full. I write separately to underscore my understanding that HBI engages in nationwide advertising, meaning that any application of the district court's injunction always and necessarily will apply to promotional activities within Illinois. The court's opinion takes care to recognize that the legal analysis of the injunction's scope could be different if that fact changes.